■ In the Matter of KEITH J. HOFFMAN, Respondent, v SABRINA L. TURCO, Appellant. [62 NYS3d 609]—

Egan Jr., J. Appeal from an order of the Family Court of Chemung County (Hayden, J.), entered October 13, 2016, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the parties' child.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2012). The father received primary physical placement of the child in July 2013 and, by order entered June 2014 on consent, the parties were awarded joint legal custody, with specified periods of visitation to the mother. In December 2015, the father commenced a modification proceeding seeking permission to relocate with the child from the City of Elmira, Chemung County to Pottstown, Pennsylvania where he had accepted a new job offer. Family Court signed a temporary order allowing the father to immediately move with the child pending a hearing on the relocation petition, and adjusted the visitation schedule to provide the mother with alternate weekend visitation. Following an October 2015 hearing, Family Court granted the father's relocation petition and modified the custody order to, among other things, provide the mother with visitation one weekend a month, with extended parenting time during the child's school breaks, long weekends and summer vacations. The mother now appeals.

We affirm. As the party seeking to relocate, the father bore the burden of establishing, by a preponderance of the credible evidence, that the proposed relocation would be in the child's best interests (*see Matter of Tropea v Tropea*, 87 NY2d 727, 741 [1996]; *Matter of Perestam v Perestam*, 141 AD3d 757, 758 [2016]). In making this best interests determination, Family Court must consider a variety of factors, including, but not limited to, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically,

emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d at 740-741; *accord Matter of Spaulding v Stewart*, 124 AD3d 1111, 1112 [2015], *lv denied* 25 NY3d 903 [2015]). Insofar as Family Court is in a superior position to assess witness credibility and make findings of fact, on review, this Court will not disturb its decision so long as it is supported by a sound and substantial basis in the record (*see Matter of Hempstead v Hyde*, 144 AD3d 1438, 1439 [2016]; *Matter of Lodge v Lodge*, 127 AD3d 1521, 1522-1523 [2015]).

The mother contends that Family Court erroneously determined that the father had established an economic necessity for relocating nearly 3½ hours away from Elmira. The father explained that the impetus for his request for permission to relocate was due to the fact that, in the fall of 2015, he was informed by his direct supervisor that his job as a finishing section supervisor at Corning, Inc. in Elmira was in jeopardy. Although he attempted to find work locally, including applying for jobs internally at Corning, the only job offer that he received was in December 2015 as a production manager at Dana Holding Corporation in Pottstown. Significantly, the job offer at Dana Holding substantially increased the father's base salary from $89,000 to $105,000 and increased his annual bonus from 10% to between 15%-30%. Upon receipt of the offer, the father presented same to Corning, but was informed that no counteroffer would be forthcoming and that his employment was scheduled to be terminated in early 2016. Family Court credited the fact that the father's opportunities to maintain his high-paying, supervisory position were not readily available in the Elmira area. The father's new position, however, offered an increased salary and provided economic stability for the child at a time when the father's employment was unquestionably at risk.

There is no question, meanwhile, that both parents maintain a positive relationship with the child and have demonstrated a willingness to foster the child's relationship with the other parent. Tellingly, the parties had no issues adhering to the visitation schedule set forth in their original custody order or coordinating the interim visitation schedule established during the 10-month period when the father was permitted to relocate with the child. The father indicated that the mother has daily telephone contact with the child and the father acknowledged that the child looks forwards to his visits with the mother.

Notwithstanding, upon balancing the *Tropea* factors (*see Mat-*

*ter of Tropea v Tropea*, 87 NY2d at 740-741), it is apparent that the father's relocation with the child is in the child's best interests. The father has been the primary physical custodian of the child since 2013. He indicated that he has extended family living in the Pottstown area, including the child's grandmother, aunts, uncles and similarly aged cousins, and that the child has been able to attend various holidays, birthday parties and other events with his family during the 10-month temporary relocation. The father testified that he is renting a three-bedroom townhouse where the child has his own bedroom, as does his son from a previous relationship—with whom the father has visitation one weekend per month—and he averred that the two children share a good relationship. The father further testified that he has enrolled the child in private school and indicated that the child participates in a weekend soccer program, which has been able to accommodate the child's weekend visitation schedule. The mother testified that she lives with her fiancé and her eight-year-old son from a previous relationship. The mother testified that both she and her fiancé were currently unemployed—she having recently given up her position working nights after obtaining physical custody of her eight-year-old son and the fiancé, a disabled veteran, being unable to work as a result of his medical condition. Further, the mother testified that her eight-year-old son suffers from certain behavioral and mental health issues that, on occasion, have resulted in violent outbursts toward both the mother and the child for which he continues to receive treatment. Accordingly, the record supports Family Court's finding that the father's relocation improved the overall well-being of the child.

Indeed, Family Court recognized the difficulties with fashioning an appropriate visitation schedule and took into consideration the concerns raised by the mother with regard to her lack of a reliable vehicle and the difficulties inherent with having to meet halfway between Elmira and Pottstown two weekends every month for visitation transfers during the 10-month temporary relocation. Accordingly, per the mother's request, Family Court adjusted the visitation schedule and reduced weekend visitation to one weekend per month during the school year and provided that the mother would have the child during spring and winter breaks, extended long weekends during the school year and summer vacations. The visitation schedule fashioned by Family Court only minimally affects the parties' original visitation order and, therefore, serves to preserve the mother's ability to maintain a meaningful relationship with the child (*see Matter of Perestam v Perestam*, 141 AD3d at 758-759). Accordingly, upon review, we find that there

exists a sound and substantial basis in the record for Family Court's determination that the child's well-being will be enhanced by providing him the continuity and economic stability of continuing to reside with the father (*see Matter of Hempstead v Hyde*, 144 AD3d at 1439).

Peters, P.J., Devine, Mulvey and Pritzker, JJ., concur. Ordered that the order is affirmed, without costs.