■ In the Matter of EMILY GG., Respondent, v TYLER HH., Appellant. (And Other Related Proceedings.) [62 NYS3d 575]—

Devine, J. Appeal from an order of the Family Court of Washington County (Michelini, J.), entered August 4, 2015, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Respondent (hereinafter the father) and petitioner (hereinafter the mother) had two sons outside of marriage (born in 2009 and 2012). Pursuant to a February 2014 order, the parties shared joint legal custody of the children, with primary physical placement to the mother and specified visitation to the father. Also that year, the mother married an active duty Marine (hereinafter the stepfather) and had a child by him. The stepfather is stationed at Camp Lejeune in North Carolina and owns a house there.

In November 2014, the mother filed a petition seeking a modification of the custody order to permit her to relocate to North Carolina. A flurry of petitions and motions seeking various relief, filed by both parties, followed. Family Court conducted a hearing and then issued an order finding, as is relevant here, that the children's best interests lie in the mother retaining primary physical custody and relocating with them. Family Court maintained the award of joint legal custody, but modified the visitation arrangement so that the father would have parenting time for a month every summer and for holidays on an alternate year basis, ordering that the mother bear responsibility for arranging the children's travel to and from New York. The father appeals.

We affirm. The mother, as the parent seeking to relocate, had to show by a preponderance of the evidence that the proposed move was in the best interests of the children (see Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 [2016]; Matter of Southammavong v Sisen, 141 AD3d 905, 905-906 [2016]). The totality of the circumstances are assessed in a best interests analysis, including factors such as "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and

noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and child[ren]'s li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child[ren] through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *accord Matter of Hempstead v Hyde*, 144 AD3d at 1439). Seeing that "[t]he weighing of these various factors requires an evaluation of the testimony, character and sincerity of all the parties involved," we will accord deference to Family Court's credibility determinations and uphold its decision if supported by a sound and substantial basis in the record (*Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]; *accord Matter of Weber v Weber*, 100 AD3d 1244, 1245-1246 [2012]; *see Matter of Southammavong v Sisen*, 141 AD3d at 906).

The mother was not entitled to any military housing benefits by virtue of her marriage to the stepfather and was owed significant sums in back child support by the father. Her financial straits left her with little choice but to live with the children and their half brother in a single bedroom at the maternal grandmother's residence and, to make matters even more complicated, she was expecting another child. The maternal grandmother was the only babysitter available to the mother, but could not watch the children enough to permit the mother to work full time and improve her financial situation. The mother found this situation to be untenable and the grandmother agreed, testifying that she wanted the mother and her children to move out as soon as possible. A move to North Carolina would solve these problems and, moreover, place the children in a more stable living environment with military benefits, such as free day care, that, in turn, would allow the mother to explore the numerous job opportunities there and shore up the family's financial stability. There is accordingly no doubt that the children as well as the mother would materially benefit from the move.

It is true that a move to North Carolina would take the children far from their father and other immediate relatives, including their grandparents. That being said, as Family Court recognized, the father has had limited involvement in the educational and medical affairs of the children and has borne far less responsibility than the mother for their care. He has further referred to the stepfather in disparaging terms around the children, and both he and the paternal grandparents ex-

posed the children to racial epithets, suggesting that the father was attempting to sabotage what the record reflects was a good relationship between the children and the mother and their mixed-race stepfather. Additionally, while the father expressed his fears that he would not see the children as much as he previously had and would have difficulty affording visitation with them if they lived in North Carolina, Family Court mitigated those fears by increasing the duration of the father's specified visitation periods and ordering the mother to take responsibility for the children's travel to and from these visits. Thus, after reviewing the totality of the circumstances, including the benefits accruing to the children that would result from the move, as well as the fact that they will be able to enjoy "regular and meaningful contact during long visitation periods with the [father], we conclude that a sound and substantial basis existed for Family Court's determination that the proposed relocation would be in the" best interests of the children (*Matter of Weber v Weber*, 100 AD3d at 1247; *see Matter of Hempstead v Hyde*, 144 AD3d at 1440-1441; *Matter of Perestam v Perestam*, 141 AD3d 757, 759 [2016]).

Garry, J.P., Egan Jr., Aarons and Rumsey, JJ., concur. Ordered that the order is affirmed, without costs.